UNITED STATES, Appellant

v.

Leslie D. PORTER, Corporal
U.S. Marine Corps, Appellee

No. 12-5003

Crim. App. No. 201100188

United States Court of Appeals for the Armed Forces

Decided July 8, 2013

PER CURIAM

Counsel

For Appellant:  Captain Samuel C. Moore, USMC, and Brian K. Keller, Esq.

For Appellee:  Captain Michael D. Berry, USMC, Captain Paul C. LeBlanc, JAGC, USN, and Lieutenant Jared Hernandez, JAGC, USN.

Military Judge:  Anthony Johnson


**This opinion is subject to revision before final publication.**

United States v. Porter, No. 12-5003/MC

    PER CURIAM:

    Contrary to Appellee's pleas, a military judge, sitting as a special court-martial, found Appellee guilty of one specification of wrongful use of cocaine and one specification of wrongful use of marijuana in violation of Article 112a, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 912a (2006).  The adjudged and approved sentence included ninety days' confinement and a bad-conduct discharge.  The United States Navy-Marine Corps Court of Criminal Appeals (NMCCA) set aside the findings and sentence, holding that testimonial evidence was admitted in violation of the Confrontation Clause of the Sixth Amendment and that the error was not harmless beyond a reasonable doubt, and authorized a rehearing.  United States v. Porter, No. NMCCA 201100188, slip op. at 2 (N-M. Ct. Crim. App. June 28, 2012).  Pursuant to Article 67(a)(2), UCMJ, 10 U.S.C. § 867(a)(2) (2006), the Judge Advocate General of the Navy certified the issues of whether the NMCCA erred in determining that:  (1) the drug testing report contained testimonial statements erroneously admitted at trial; and (2) admission of the testimonial evidence was not harmless beyond a reasonable doubt.[1]

---

[1] The following issues were certified:

    I.    THE ENTRIES ON PAGES 54 AND 154 OF PROSECUTION
          EXHIBIT 15 THAT NMCCA FOUND TO BE TESTIMONIAL

I.

On September 16, 2010, Appellee received medical attention at a civilian hospital following a traffic accident near Marine Corps Air Station Cherry Point.  While Appellee was admitted at the civilian hospital, medically ordered toxicological tests indicated the presence of tetrahydrocannabinol (THC) (the metabolite of marijuana) and benzoylecgonine (BZE) (the metabolite of cocaine) in his system.  The next day, Appellee was sent for follow-up medical care at a military health care facility where he appeared dazed and unable to answer simple questions.[2]

In the meantime, after being informed of Appellee's toxicology results, his commanding officer authorized a blood draw and urinalysis to search for evidence of drug use.  The blood and urine samples were turned over to the Criminal

---

HEARSAY WERE NEITHER MADE WITH THE PRIMARY PURPOSE OF PROVING PAST EVENTS RELEVANT TO LATER CRIMINAL PROSECUTIONS NOR FORMALIZED.  DID THE LOWER COURT ERR BY FINDING THAT THESE PAGES WERE TESTIMONIAL STATEMENTS?

II.  DID THE LOWER COURT ERR BY FINDING THAT THESE ENTRIES DEEMED TESTIMONIAL HEARSAY CONTRIBUTED TO APPELL[EE]'S CONVICTION WHERE THESE ENTRIES ONLY PROVIDED TECHNICAL DATA AND THE GOVERNMENT'S CASE WAS OTHERWISE STRONG?

[2] The treating physician at the military health care facility testified that "head trauma" was one of the considerations she was worried about when she observed Appellee's "altered mental status."

Investigation Command (CID), which sent the samples to the Armed Forces Institute of Pathology (AFIP) for testing. AFIP performed a battery of tests and concluded, in a 169-page drug testing report (DTR), that the samples were positive for THC and BZE.

At trial, to lay the foundation for the DTR, the Government called Ronald Shippee, Ph.D., employed by AFIP as an expert witness. Dr. Shippee, who was qualified as an expert witness in forensic toxicology, testified as to AFIP's testing procedures and the results of Appellee's drug tests. In light of Dr. Shippee's testimony that he had no supervisory role at AFIP and the fact that neither the analysts nor the reviewer who signed pages 54 or 154 of the DTR testified, the defense objected to admission of the DTR on Confrontation Clause grounds.

The military judge denied the defense objection and admitted the DTR. Although he stated on the record that he did not consider the report's cover memorandum summarizing the testing results, the military judge apparently did consider the rest of the DTR, including pages 54 and 154, and Dr. Shippee's testimony thereon. Dr. Shippee testified that AFIP accessioning employees can determine whether a sample is being tested for purposes of a criminal investigation once they receive the sample. He also testified that the "IN" portion of Appellee's sample identification number -- "10-4748 IN" -- indicates that the

testing is part of a criminal investigation.  Referencing the confirmation summary pages only, Dr. Shippee testified as to the quantity of BZE and THC present in Appellee's sample, and that those amounts were above the respective Department of Defense (DoD) cutoff levels.  Moreover, Dr. Shippee referred to the technician's and certifying scientist's signature blocks on the summary confirmation documents to illustrate AFIP's quality control measures.  Finally, he offered his assessment "after reading this packet" that Appellee's sample tested above the DoD cutoff for THC and BZE.  At no time during his testimony, however, did Dr. Shippee specifically interpret or rely on the machine-generated data contained in the DTR to independently conclude that Appellee's sample tested positive for THC and BZE.[3]

## II.

In United States v. Tearman, 72 M.J. 54 (C.A.A.F. 2013), we held that:  (1) chain-of-custody documents and internal review worksheets contained within a drug testing report were nontestimonial; and (2) admission of testimonial evidence (the official test result and certification contained in the DD Form 2624) was harmless beyond a reasonable doubt.  In deeming the error harmless, we noted that the expert witness, relying on

---

[3] While referencing the initial screening "summary sheet," Dr. Shippee testified that Appellee's sample tested "presumptive positive not confirmed" for THC and BZE, but, in doing so, Dr. Shippee was not interpreting or relying upon machine-generated data.

nontestimonial statements, independently and conclusively established the presence in the appellant's sample of a drug metabolite in excess of the DoD cutoff level and that the testimonial hearsay was barely mentioned during her testimony or the rest of the government's case. Id. at 62-63. Accordingly, we concluded that any impact the testimonial statements may have had on the panel's findings was both cumulative and de minimis when viewed in light of the entire record. Id. at 63.

At issue in this case are pages 54 and 154 of the DTR, which contain summaries of the test results with signatures of an analyst and a reviewer. In summarizing the results of the confirmation tests, the two pages note the following information: specimen source, amount tested, concentration of substance tested, diluents amount, dilution factor, and final concentration. Page 54 contains a handwritten positive symbol indicating the presence of BZE, and page 154 contains a similar handwritten positive symbol -- as well as the handwritten word "Present" -- indicating the presence of THC. Dr. Shippee primarily relied on these pages to establish that AFIP's testing controls and standards were met for Appellee's test.

As we noted in Tearman, "[t]he language used by the Supreme Court to describe whether and why a statement is testimonial is far from fixed." 72 M.J. at 58. Nevertheless, the two summary

confirmation pages at issue squarely qualify as testimonial statements under the Supreme Court's various formulations.

Similar to the certifications in the DD Form 2624 which were held to be testimonial in United States v. Sweeney, 70 M.J. 296, 304 (C.A.A.F. 2011), the purpose of the signature blocks on the confirmation summary pages at issue was to certify that AFIP's testing controls and standards were met for Appellee's test. Moreover, the pages, which also summarize the results of Appellee's test, were prepared by analysts at CID's request and with certain knowledge that the testing was part of a criminal investigation. See id. There is no question that the statements were "made under circumstances which would lead an objective witness reasonably to believe that the statement[s] would be available for use at a later trial." United States v. Blazier (Blazier I), 68 M.J. 439, 442 (C.A.A.F. 2010) (quoting Crawford v. Washington, 541 U.S. 36, 52 (2004)); see also Sweeney, 70 M.J. at 302.

Additionally, unlike the chain-of-custody documents and internal review worksheets at issue in Tearman, the confirmation summary pages (1) were generated by an external request from CID for the purpose of criminal investigation; and (2) summarize "additional substantive information," Sweeney, 70 M.J. at 299 -- namely, that Appellee's sample was positive for THC and BZE and that AFIP's testing controls and standards were met for

7

Appellee's test.  These facts suggest that the pages were created for the purpose of "establish[ing] or prov[ing] past events potentially relevant to later criminal prosecution," Bullcoming v. New Mexico, 131 S. Ct. 2705, 2714 n.6 (2011) (plurality opinion) (quoting Davis v. Washington, 547 U.S. 813, 822 (2006), and would "reasonably [be] expect[ed] to be used prosecutorially," Crawford, 541 U.S. at 51 (internal quotation marks omitted), rather than having been made for an administrative purpose, Tearman, 72 M.J. at 60.  While the two pages do not exhibit "indicia of formality or solemnity that . . . would suggest an evidentiary purpose," that is merely one factor relevant to whether statements are testimonial. Tearman, 72 M.J. at 61 (citing Bullcoming, 131 S. Ct. at 2717). For the reasons above, we agree with the NMCCA that the notations and signature blocks on the summary pages were testimonial and admitted in violation of the Confrontation Clause.

Given that the error is constitutional, the question is not whether the evidence was legally sufficient without the testimonial evidence, but "whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction.  This determination is made on the basis of the entire record . . . ." United States v. Blazier (Blazier II), 69 M.J. 218, 227 (C.A.A.F. 2010) (internal

quotation marks omitted).  In making this determination, this Court applies the balancing test set forth in Delaware v. Van Arsdall, 475 U.S. 673 (1986).  Sweeney, 70 M.J. at 306.

We agree with the NMCCA that the military judge's admission of the two summary confirmation pages was not harmless beyond a reasonable doubt.  These testimonial statements constitute a more substantial portion of the expert witness's testimony than in Tearman.  With regard to the quantitative results of Appellee's drug test, Dr. Shippee exclusively referenced the testimonial statements in the summary pages without delving into the underlying machine-generated data.  Moreover, Dr. Shippee highlighted the signature blocks on the summary pages to establish that AFIP's testing standards and controls were followed during the testing of Appellee's samples.  Only at the conclusion of his testimony did Dr. Shippee offer an independent assessment that, based on the DTR in toto, Appellee's samples tested above the DoD cutoff level for THC and BZE -- but at no time did Dr. Shippee specifically interpret or rely on the machine-generated portions of the DTR to independently conclude that Appellee's sample had tested positive for cocaine and THC. In light of these facts, we agree that the Government has failed to carry its burden to demonstrate that there was no reasonable possibility that the testimonial statements contributed to Appellee's convictions.

DECISION

Accordingly, both certified issues are answered in the negative, and the decision of the United States Navy-Marine Corps Court of Criminal Appeals is therefore affirmed.